# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

ERIQ R. McCORKLE,

        Petitioner,    :    Case No. 3:21-cv-345

- vs -    District Judge Thomas M. Rose
    Magistrate Judge Michael R. Merz

WARDEN, Southeast Correctional
  Institution,

    :

        Respondent.

## REPORT AND RECOMMENDATION

Second paragraph  1ˢᵗ line Barker not Barrker

This habeas corpus case, brought *pro se* by Petitioner Eriq McCorkle to obtain relief from his conviction in the Greene County Court of Common Pleas, is before the Court for decision on the merits on the Petition (ECF No. 1), the State Court Record (ECF No. 5), the Return of Writ (ECF No. 6), and Petitioner's Traverse (ECF No. 12).

**Litigation History**

McCorkle was indicted by the Greene County grand jury on December 14, 2018, on charges of trafficking in cocaine in violation of Ohio Revised Code § 2925.03(A)(1) (Counts 1 and 3), possession of cocaine in violation of Ohio Revised Code § 2925.11(A) (Counts 2, 4 and 6), trafficking in cocaine in violation of Ohio Revised Code § 2925.03(A)(2) (Count 5) with a 1-year firearm specification, carrying a concealed weapon in violation of Ohio Revised Code § 2923.12(A)(2) (Count 7), and improperly handling a firearm in a motor vehicle in violation of Ohio Revised Code § 2923.16(B) (Count 8) with 15 forfeiture specifications. (State Court Record, ECF No. 5, Exhibit 1, Indictment). Upon arraignment, McCorkle stood mute and the Court entered a plea of not guilty. *Id.* at Ex. 2.

McCorkle moved on January 17, 2019, to suppress the evidence against him. *Id.* at Ex. 5. The case was tried to a jury on September 14, 2020. A hearing on the motion to suppress was scheduled for April 3, but on March 26 McCorkle moved to continue that hearing, stating "Defendant is presently out of custody on bond. Furthermore, there are no speedy trial issues as Defendant filed the Motion to Suppress and time is tolled." *Id.* at Ex. 7, PageID 47. On May 17, 2019, McCorkle sought and received a continuance of the pretrial scheduled for May 20, 2019. *Id.* at Exs. 9 and 10.

On August 20, 2019, Attorney Nowicki moved to withdraw because of accusations by McCorkle that Nowicki was working with the prosecutor. *Id.* at Ex. 11. On September 19, 2019, McCorkle signed a waiver of speedy trial rights which he asserted was done knowingly, intelligently, and voluntarily. *Id.* at Ex. 13.

On October 8, 2019, McCorkle filed with the Clerk of the Supreme Court of Ohio an Affidavit of Disqualification directed at the trial Judge, The Honorable Michael Buckwalter. *Id.* at Ex. 14. Chief Justice O'Conner denied disqualification, noting that as evidence of bias McCorkle had relied on the judge's denial of a continuance. *Id.* at Ex. 15.

On October 18, 2019, now represented by Attorney Ben Swift, McCorkle made a demand

for discovery and a request for a pretrial conference. *Id.* at Ex. 16. On December 13, 2019, McCorkle moved for appointment of a state-funded expert to re-weigh the drugs in suit. *Id.* at Ex. 17. On January 7, 2020, Judge Buckwalter denied the motion, in part because McCorkle had not shown he was indigent.[1] *Id.* at Ex. 19.

Then on January 23, 2020, Attorney Swift moved to withdraw because his communications with McCorkle had broken down and McCorkle had asked him to withdraw. *Id.* at Ex. 20. Judge Buckwalter granted the withdrawal and noted that McCorkle had elected to represent himself in the case. *Id.* at Exs.21, 22.

The hearing on the motion to suppress was set for March 3, 2020, but continued on McCorkle's oral motion:

> This matter comes before the Court upon defendants' pro se oral motion to continue the Motion to Suppress previously scheduled for March 3, 2020. The defendant telephoned the Court and stated his car had broken down and could not make it to the hearing on time. The State does not object. Accordingly, this matter is hereby rescheduled for a Motion to Suppress on March 18, 2020 at 2 pm.

*Id.* at Exs. 27, 28. In the later entry, Judge Buckwalter noted that McCorkle had continued to equivocate with the Assignment commissioner about a date for discovery disclosure. *Id.*

A hearing was set for April 23, 2020. At the time it was to commence, McCorkle repeatedly refused to enter the well of the courtroom and be seated, whereupon he was held in contempt of court and committed to jail for ten days. *Id.* at Ex. 33.

On April 29, 2020, Judge Wolaver, to whom the case had been reassigned, concluded:

> In consideration of the pandemic emergency involving the Coronavirus, COVID-19, the Court pursuant to R.C. 2945.72 (H) will order speedy trial waived until the trial date is set. The Court finds this extension of speedy trial of statutory and constitutional rights to be reasonable based upon *Barker v. Wingo*, 407 U.S. 514

---

[1] Attorney Swift was retained, not appointed.

3

(1972), *U.S. v. Loud Hawk*, 474 U.S. 302 (1986) and Attorney General Opinion 2020-002.

*Id.* at Ex. 35.

McCorkle then, on June 2, 2020, filed an Affidavit of Disqualification directed at Judge Wolaver. As grounds for disqualification, among others, McCorkle asserted

> the judge has denied his constitutional challenges to the court's jurisdiction, either refused to respond to or denied his affidavits and requests to take "mandatory judicial notice," slandered him by asking whether he was a "sovereign citizen," and held him in contempt of court for refusing to enter the well of the courtroom during a hearing.

*Id.* at Ex. 37. Chief Justice O'Connor denied disqualification. *Id.*

On July 29, 2020, Judge Wolaver denied McCorkle's motion to suppress. *Id.* at Ex. 37. On August 3, 2020, Judge Wolaver found that McCorkle had engaged in activity consistent with drug dealing on separate occasions in July 2020, and had lied to the court about the status of charges arising from that activity (Bond Entry, State Court Record 5, Ex. 38).

On September 2, 2020, McCorkle filed a Motion to Discharge, claiming for the first time a violation of his speedy trial rights. *Id.* at Ex. 39. Judge Wolaver denied that motion on September 10, 2020, noting the days the statute was tolled on account of the pandemic and McCorkle's written waiver of speedy trial rights. *Id.* at Ex. 41.

The case was then tried to a jury commencing September 14, 2020. Upon the jury verdicts, McCorkle was sentenced to an aggregate term of seventy-two months imprisonment. *Id.* at Ex. 43. He appealed to the Second District Court of Appeals, raising the following assignments of error

> The jury held, against the manifest weight of the evidence, that the cash in the amounts of $36,750 found in the home shared with his girlfriend, and $310 found in Mr. McCorkle's wallet at his residence were to be forfeited as proceeds of criminal activity.
>
> The Trial Court erred when it held that Mr. McCorkle's right to a speedy trial was within the time permitted by law.

4

> The Trial Court erred when it held that Mr. McCorkle waived his speedy trial time when the waiver was not knowingly and voluntarily executed.

*Id.* at Exs. 49, 54. The Second District affirmed. *Id.* at Ex. 61.

McCorkle then appealed to the Supreme Court of Ohio, relying on the following two propositions of law:

> 1. The Right to a Speedy Public Trial is a guaranteed Right by both the Constitution of the State of Ohio (Article I Section X), and the 6th Amendment of the United States Constitution. It is enforced by the Statutory Law, under O.R.C. 2945.71 (C)(2)" a person charged with a felony must be brought to Trial within 270 days after a person's arrest".
>
> 2. "A person may waive a Constitutional Right to a Speedy Trial, provided that such waiver is knowingly and voluntarily made" *Barker v. Wingo* (1972) 407 U.S. 514, 523.

*Id.* at Ex. 63. The Supreme Court declined jurisdiction, *Id.* at Ex. 65.

On December 9, 2021, McCorkle filed a delayed application for reopening his direct appeal, pleading nine assignments of error allegedly omitted because of ineffective assistance of appellate counsel. He attempted to excuse the delayed filing on the basis of the COVID 19 pandemic. The Application remained pending as of March 4, 2022.

## Analysis

McCorkle pleads one ground for relief:

> **Ground One:** Petitioner's rights to speedy trial were indeed violated in pursuance of the United States Constitution (6th Amendment).
>
> **Supporting Facts:** The arrest of the petitioner occurred December 6, 2018, and a decision and conviction wasn't rendered until September 17, 2020. A delay becomes presumptively prejudicial as it approaches a year in length.

(Petition, ECF No. 1, PageID 4).

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

The Warden notes that McCorkle presented his speedy trial claim, both under Ohio and federal constitutional law, to the Second District Court of Appeals which rejected the claim on the merits. Respondent claims the Second District's decision is an objectively reasonable application of the relevant Supreme Court precedent, *Barker v. Wingo,* 407 U.S. 514, 530-32 (1972).

In his Traverse McCorkle has written extensively on this question. First of all, he denies that his speedy trial claim in this Court is in any way based on violation of the Ohio speedy trIAl statute, Ohio Revised Code § 2945.71 (Traverse, ECF No. 12, PageID 2203). The Court agrees. Although claims under both Ohio and federal constitutional law were made on appeal, McCorkle relies entirely on federal law in his Petition.

In denying the assignments of error related to speedy trial, the Second District held:

{¶ 20} The second and third assignments of error allege:

The Trial Court erred when it held that Mr. McCorkle's right to a speedy trial was within the time permitted by law.

The Trial Court erred when it held that Mr. McCorkle waived his speedy trial time when the waiver was not knowingly and voluntarily executed.

{¶ 21} "[T]he standard for reviewing claims of speedy trial violations is 'whether the trial court's ruling is supported by the evidence or whether the court abused its discretion by making a finding manifestly against the weight of the evidence.'" *State v. Gatewood,* 2d Dist. Clark No. 2010-CA-18, 2012-Ohio-202, ¶ 15, citing *State v. Humphrey,* 2d Dist. Clark No. 2002-CA-30, 2003-Ohio-3401, ¶ 21.

{¶ 22} "The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution * * *." *State v. Adams,* 43 Ohio St.3d 67, 68, 538 N.E.2d 1025 (1989). In Ohio, these rights are also protected by Section 10, Article I of the Ohio Constitution, and are enforced by statute. *See id.* Under R.C. 2945.71(C)(2), a person charged with a felony must be brought to trial within 270 days after the person's arrest, subject to any applicable tolling provisions in R.C. 2945.72.

{¶ 23} McCorkle was arrested on December 6, 2018, and remained in custody until March 2, 2019, when he was released on bond. While he was in custody, on January 17, McCorkle filed the motion to suppress. Later, after having been found in contempt of court, he was in custody for almost a week in April 2020, before being again released on bond. On April 29, 2020, due to the COVID-19 pandemic, the trial court entered a tolling order under R.C. 2945.72(H), citing Attorney General Opinion 2020-002, that extended the time for trial until the scheduled trial date the following September. On July 21, 2020, McCorkle was rearrested for violating his bond conditions, and he remained in custody until the trial began. The trial court overruled the suppression motion in late July, and the trial began in mid-September. The trial court found that 42 days had elapsed from McCorkle's arrest until he filed the suppression motion and that, under R.C. 2945.71(E), each of these days counted as three, for a total of 126 days. The court also found that its April tolling order, issued while the motion to suppress was still pending, meant that the speedy-trial time was effectively tolled until the trial started. We see no problem with the trial court's ruling.

{¶ 24} Under the tolling provisions in R.C. 2945.72, the speedy-trial time may be extended by "[a]ny period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused," R.C. 2945.72(E), as well as by "the period of any reasonable continuance granted other than upon

7

the accused's own motion," R.C. 2945.72(H). The provision in division (E) was triggered when McCorkle's filed the suppression motion, and while the trial court did not decide that motion for well over a year and the trial did not begin for over a year and a half, the delay was justified.

*5 {¶ 25} Many things occurred between McCorkle's indictment and trial that tolled the speedy-trial time. Some are attributable to McCorkle: defense counsel was replaced multiple times, McCorkle filed numerous motions, he was found in contempt, and then he violated his bond conditions, to name a few. The most significant event, of course, was the COVID-19 pandemic, which began in early 2020. "[T]he General Assembly tolled certain statutory time limits because of the COVID-19 global health emergency" from March 9, 2020, until July 30, 2020. *Chapman Ents., Inc. v. McClain*, Ohio Slip Opinion No. 2021-Ohio-2386, ⎯⎯ N.E.3d ⎯⎯, ¶ 10-11; 2020 Am.Sub.H.B. No. 197, Sections 22(B) and (C). One of the tolled time limits was the speedy-trial time. H.B. 197, Section 22(A)(3) (tolling "[t]he time within which an accused person must be brought to trial or, in the case of a felony, to a preliminary hearing and trial"). Moreover, it was the opinion of the Ohio Attorney General that "[c]ourts may suspend jury trials to prevent the spread of the novel coronavirus, and they may do so consistent with state and federal speedy-trial obligations." 2020 Ohio Atty.Gen.Ops. No. 2020-002, syllabus. Citing "[t]he broad language of" R.C. 2945.72(H), the opinion concluded that "the current pandemic emergency provide[d] a 'reasonable' basis for continuance." *Id.* at p. 2. It further concluded that "a continuance would comport with state and federal constitutional guarantees." *Id.* at p. 7.

{¶ 26} All in all, we cannot say that the delay in bringing McCorkle to trial violated his speedy-trial rights. The trial court's speedy-trial ruling was supported by the evidence and was eminently reasonable. Because we conclude that McCorkle was brought to trial within the statutory time, his argument that his speedy-trial waiver was invalid is moot, and we decline to consider the issue.

{¶ 27} The second and third assignments of error are overruled.

*State v. McCorkle*, 2021-Ohio-2604 (Ohio App. 2d Dist. Jul. 31, 2021).

The determinative question in this habeas corpus case is whether this decision is an objectively reasonable application of clearly established United States Supreme Court constitutional precedent. 28 U.S.C. § 2254(d)(1). The Sixth Amendment to the United States

8

Constitution guarantees a criminal defendant a speedy and public trial. The Congress of the United States has adopted a federal Speedy Trial Act, 18. U.S.C. § 3161 to enforce the constitutional right. While the Sixth Amendment is applicable to state criminal trials, *Klopfer v. North Carolina,* 386 U.S. 213 (1967), the federal Speedy Trial Act is not. Therefore precedent interpreting 18 U.S.C. § 3161 is not directly applicable to the constitutional question. The same thing is true of Ohio Revised Code § 2945.71 et seq. That is to say, both statues were adopted to enforce the Sixth Amendment and the cognate provisions of the Ohio Constitution, but judicial opinions interpreting and applying the statues are not directly applicable to the constitutional question.

McCorkle argues that the Sixth Circuit has held that the requirements of the Ohio Speedy Trial statute are "coextensive" with the 6th Amendment speedy trial requirement." Traverse, ECF No. 12, PageID 2204, citing *Brown v. Bobby,* 656 F. 3d 325 (6th Cir. 2011). Not so. In *Brown* the Sixth Circuit held that "Ohio courts regard the state's speedy trial scheme as an implementation of the federal constitutional guarantee to a speedy trial." 656 F. 3d at 329, citing *State v. O'Brien,* 34 Ohio St.3d 7, 516 N.E.2d 218, 220 (1987); *State v. Pachay,* 64 Ohio St.2d 218, 416 N.E.2d 589, 591 (1980).

The Supreme Court has developed a four-part balancing test to use in determining whether a defendant's constitutional right to a speedy trial has been violated: a court must balance (1) the length of the delay; (2) the reasons for the delay; (3) whether the defendant has asserted his right; and (4) prejudice to the defendant. *Barker v. Wingo,* 407 U.S. 514, 530-32 (1972).

**Length of the Delay**

McCorkle was arrested on December 6, 2018, and not brought to trial until September 14,

2020. Here the delay was slightly over twenty-one months.

McCorkle provides a lengthy calculation of the delay using Ohio's statutory provisions that counts a day in jail as three days toward the statutory limit of 270 days (Traverse, ECF No. 12, PageID 2205-07). This provision of the Ohio statute does not apply to calculating delay for federal constitutional purposes. For purposes of *Barker*, the actual delay was 648 calendar days.

**Reasons for the Delay**

The reasons for delaying particular events in the run-up to a felony trial in a court of general jurisdiction are often not apparent from the docket. No Sixth Amendment jurisprudence requires reasons to be written. In this case, some reasons are given explicitly and some must be inferred.

Some motions must be decided before trial – in this case in particular, the motion to suppress was required to be made and decided pre-trial. Ohio R. Crim. P. 12. Motions to suppress usually require a hearing at which evidence is taken and may require briefing after the hearing and preparation of a transcript before briefing.

Each time an attorney is replaced, new counsel will require time to prepare, and counsel was replaced twice in this case before McCorkle decided to proceed *pro se*.

A judge who is the subject disqualification proceedings before the Chief Justice is barred from acting until she has decided that he is not disqualified. In this case McCorkle sought, seriatim, disqualification of both Greene County General Division Common Pleas Judges for insubstantial reasons but that occasioned delay.

McCorkle obtained one continuance by moving for it orally on the uncorroborated claim his car had broken down. On another occasion, he caused delay by refusing to be seated in the

well of the courtroom in defiance of a clear order, occasioning a ten-day delayed while he was in jail for contempt. On two occasions in the summer of 2020, he occasioned delay by being arrested on new felony drug trafficking charges in Franklin County, Ohio.

The major reason for delay was the public health measures taken to attempt to contain the COVID-19 virus, beginning with Governor DeWine's declaration of an emergency in mid-March, 2020. The pandemic had its greatest impact on jury trials which require a group of strangers to spend large amounts of time in close proximity to one another. Stories about how such gatherings resulted in spread of the illness were widespread. For example, the disease was apparently spread during a Rose Garden reception for Justice Amy Barrett. It was difficult for public health officials to provide the public with useful information. There was no effective vaccine available from the initial lock down until after McCorkle's trial. Given the seriousness of the disease (high mortality, high morbidity with maximum ICU usage, rapid spread, no viable treatment of vaccine), conscientious decisions to suspend jury trials were justified; this Court suspended them as well. All in all, the delays in bringing this case to trial were well justified.

McCorkle argues much of the delay must be charged to the State: since it did not benefit him, it must have benefited them. However he cites no evidence of a continuance which the State sought for its benefit, e.g. to investigate further or obtain witnesses.

**Whether the Defendant Asserted His Speedy Trial Right**

The only instance in the record of McCorkle asserting his speedy trial right is the Motion to Discharge filed September 10, 2020, four days before trial (State Court Record, ECF No. 5, Ex. 40). Against that the Court must weigh McCorkle's waiver of speedy trial and his failure to even

11

attempt to withdraw that waiver.

**Whether the Defendant Was Prejudiced by the Delay**

The last factor to be weighed is whether the defendant was prejudiced by the delay. Under *Barker* a presumption of prejudice attaches as the delay approaches one year. *Doggett v. United States*, 505 U.S. 647 (1992). Obviously here the delay was long enough to trigger the *Barker* presumption. The question, then, is whether the presumption of prejudice is overcome by the actual evidence.

A major source of injury to defendants who remain incarcerated pre-trial is damage to their jobs, families, and financial interests. McCorkle catalogues how all of those injuries accrued to him. The most severe impact of these conditions is on the defendant who is not released pre-trial but is then acquitted – he or she has lost that time forever. The defendant who is convicted, however, is given credit day-for-day for pre-trial incarceration. That is true here of McCorkle.

Instead of attending to one of his many claimed legitimate businesses, McCorkle was caught twice while released on bond plying his drug trafficking business to the tune of five-figure seizures. Such prejudice simply cannot count in the speedy trial calculation.

McCorkle points to one tangible prejudice: his only intended trial witness, Timothy Buckles, died shortly before trial.

> Indubitably, Petitioner was prejudiced by the untimely death of the Petitioner's only witness Timothy Buckles who happened to past [sic] just days before the Trial. The lack of this vital testimony, impaired the Petitioner's Defense indisputably and made it impossible for the Petitioner to receive a Fair Trial. His testimony alone had the potential to exonerate the Petitioner.

(Traverse, ECF No. 12, PageID 2211). This claim is completely conclusory. What was Buckles

expected to testify to? What would have made his testimony admissible? If Buckles was, as claimed, an eyewitness, nothing would have prevented McCorkle himself from testifying. This would of course have exposed him to cross-examination, but nothing in the Constitution guarantees a defendant the opportunity to present testimony from someone who cannot be impeached.

**Conclusion**

When a habeas corpus court is presented with a claim already decided on the merits in the state courts, our task is not to decide if the state courts were right. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fair-minded jurists could disagree" on the correctness of the state court decision," *Harrington v. Richter,* 562 U.S. 86, 101 (2011)(quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The state court decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall,* 572 U.S. 415, 421 (2014).

*Barker* does not tell us what weight to give to the factors it requires us to consider. Here the Second District considered all the required factors and gave them weight either side as appears fair to this Court. It is therefore recommended that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that

13

any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

April 8, 2022.

s/ *Michael R. Merz*<br>United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. #